Madam Clerk, please call the case for the day. Counsel, please approach. We're going to be arguing. Introduce yourselves and approximately how many minutes you wish to address us. Good morning, Your Honors. Carrie DeGrand for the defendants, the police. Depending on how many questions the court has for us today, I would estimate about 15 to 20 minutes. Good morning, Your Honor. Gary Grosso, Anthony Bass on behalf of Developer Surety, the appellant. Probably 10 or 15 minutes also. Reserve some time for it. I will. Five minutes. Okay, thank you. You may proceed. Thank you, Your Honor. Okay. Good morning. We are here seeking reversal and demand in this case back to the trial court for a trial. The issue is one issue before the court, and that is essentially should we expand the exception of the collateral source? That already applies to attorney malpractice cases, but really no other area of tort law to reinsurance. And we emphatically assert that reinsurance is not insurance in the traditional sense of a benefit that's covered with no obligation to repay. This is a reinsurance case. That's what you're saying. This is about whether or not reinsurance is collateral source. Not legal malpractice. Exactly. Okay. So accepting that, then why isn't this in the nature of a subrogation? There's some discussion about subrogation in disguise. Isn't this a subrogation claim? Well, it would be if there was no obligation to repay. We did seek, leave, also assert subrogation. But when you look at the contracts for Endurance and Munich We, and you look at how reinsurance applies generally to the industry, it being the oil to allow surety companies, for example, to operate, there is an obligation to repay. So that in, for example, in the Sterling Radio case, there was a voluntary payment, no obligation to repay it. In the USF case, there was an issue about insurance, typical medical bills that were covered. The court didn't reach the other issue about whether or not the parent's payment was applicable as collateral source. But those are obligations of no repayment. Reinsurance here in the surety business is a form of financing. It is really repayment insurance. But is there, is what you're saying that developers had a contractual obligation to pursue the third party responsible for the loss? And under its contracts with Munich We and Endurance, it was obligated on their behalf to pursue the defendants. And if it recovered, it would have to repay. Right? Yes. But what it wanted to do was pursue the defendants in its own name without disclosing that the real party in interest was Endurance We and Munich. Well, not in that sense, Your Honor, because we, in legal malpractice, the other oddity of legal malpractice is that you have to have the attorney-client relationship. And you don't have the equitable, at least not yet, has not been recognized as equitable subrogation allowing a non-client here, Endurance or Munich We, to step in. And you wouldn't have them stepping in, but if this is a subrogation claim, that you have a contractual obligation on behalf of your reinsurers to pursue the defendants, isn't the jury entitled to know that? Oh, yes. And we asked, and when the court, when the trial court took this up as a motion to eliminate on the eve of a trial, which actually became a dispositive motion, we made that argument. We went back in and said, then give us leave to assert this as a subrogation, equitable subrogation case. And, sure, the jury would get to know that. There was no intent not to have the jury. No. I mean, if that's true, then, first of all, you have no damages. That's been established, right? No. No? What damage do you have left? We have to repay. No, no, other than repayment. Yeah, repayment is everything. Other than that. That's, of course, that's everything. Okay. But you, the plaintiff. Deval Rashirdi. Deval Rashirdi. Zero. You're just saying you owe to insurers, certainly insurers, right? There's nothing that you have even fully recompensed. Except for the obligation. Obligation. And that obligation is in the nature of a surrogate, which is why you wanted to amend your complaint. Right. Okay. So then I'm confused a little bit by your answer because then you're saying this is a subrogation situation. A surrogate shouldn't be brought in in the nature of a subrogation claim. Well, it shouldn't have been brought in that nature if it wasn't because at the time, it wasn't until the EVA trial that we apparently found out that you had no damages. But other than this claim. Other than the claim for repayment. So it is a hybrid. It's a hybrid. Well, not a hybrid because if we had known at the outset, I mean, if the facts were known, but in any event, they were disclosed until the EVA trial, no damages, correct? Your client had no damages. Except for the client. I understand that, Your Honor. Here's the distinction. For example, in an excess insurance where you have primary insurance and excess insurance, I had this case myself in the federal court where indeed it was an equitable subrogation claim because what really happened is that the excess carrier paid the damages. And so the primary carrier was bringing it as an equitable subrogation, even though the primary carrier had no obligation to repay the excess. That is the purest situation. When I use the word hybrid, the hybrid here is that we have the obligation to repay. If developer surety, for example, were in BK, in the bankruptcy court, the endurance and unit reading would file a proof of claim because the obligation is there to repay. And so developers can't walk away from this obligation. For example, if you make a claim on traditional insurance, your policy goes up, you might decide, well, I'm not going to go there anymore. I'm going to go to another carrier. Developers can't do that. So while we go back and forth on the repayment, I think that we brought it because of the contractual obligation to repay and we need to restore the balance. And we then sought leave when the court approached this issue to ask the court to give us leave to then assert it as a subrogation claim, which the court said was essentially the same. So the court said no to that and we would have proceeded, no difference in the evidence, we would have proceeded as a subrogation claim. But this is a hybrid situation which arguably could be brought either way. And it is a case of first impression in that regard in this state. Nobody was able to find anything like this. And so is it your position, is it developers' position, that the obligation to sue third parties includes any and all contingent liability cases, that developers doesn't have an option, for example, in this case, where the attorney's malfeasance, if it was, may or may not have caused the loss. Developers could not look at that and say, you know what, I really don't think we have a legal malpractice claim. They didn't have an option there. They had to go forward on behalf of the reinsurers. I believe they had the obligation to go forward if they thought there was a meritorious case, which they believed there was. They could make the judgment that they don't have a meritorious case and decide not to proceed. They would then still have to repay. They would eat the loss. And that's what a lot of people do. You have to repay how? You're relying on the subrogation provision of both reinsurance treaties, right? It obligates you to go against any third party that caused the loss. And also to repay. Repay regardless. Repay regardless. Where is that? We're not talking about repaying through increased premiums. We're talking about you have to write a check for the reinsurance premium. For example, Your Honor, in answer to your question, which we pointed out on page 16 of our brief, developers must subsequently pay a higher premium based upon the percentage of the reinsurance premium rate up to the range of 14 percent until the balance is restored. So they would have an obligation to repay regardless. That is a calculation that only an expert could make. If we're talking about your obligation to repay through increased premiums, it's not a dollar for dollar. You know, we paid you $600,000 on this bond claim. Therefore, your premiums are going to be increased by X percent until we've paid back the $600,000. It's a calculation that's based on the entirety of developers' business. And you may have had risk payment on one side and lower risk and nonpayment on another side. And that whole universe of business is what goes into the calculation of the premium, right? But it is an obligation to repay it. But Your Honor, if that's your damage, if that's the way it's repaid, that has to be the subject of expert testimony. We're talking about the only thing we're talking about here is the obligation to write a check. And my question is, other than a subrogation action, leaving aside increased premiums, where is the obligation to write a check to the reinsurance school? The obligation is just only there to increase the premiums. And in Endurance 1, it is to repay. It says, Endurance has a contractual right to make developers repay, to reinstate any and all portion of the reinsurance under any excess layer of reinsurance coverage provided by this contract that is exhausted by loss. So it is another calculation. My point is that it can be brought either as subrogation or directly, because we do know that whether or not it's calculated one way or another, the calculation does result in repaying the loss, and the wrongdoer shouldn't get the benefit of the fact that it's a complicated formula. Maybe the trial court should have held a hearing on this. It came up at the … It would have to have been the subject of expert testimony at trial. It's a completely different trial. If developers is going to present a case to a jury and say, we were damaged to the tune of $2.6 million by this lawyer's malpractice, and the $2.6 million isn't out of pocket to developers, it's going to be paid back to some … Over time. You have to have an expert who's going to say what the present cash value of those payments over time are. You can't present a case to the jury saying, give us $2.6 million when developers has who knows how long, 10 years, to pay it back. That may have been the way it should have been handled. The court may have asked the trial court if the court wanted to go down this road. Remember, this discovery was done years before and the issue was taken up at the time of trial. If the court had made those rulings and said it needed evidentiary evidence on that, we would have certainly responded. This was … But it's … you propose to present a case to the jury. I am the victim of malpractice. Yes. I've been damaged to the tune of $2.6 million. If the obligation to repay is in the form of increased payments, that's not true. And you don't have an expert who will say what that number is. Not now. That's correct. If it's a subrogation claim … Which we also … … because Munich and Endurance actually paid the money, that wasn't the case you were going to present to the jury either. We also … Here's our subrogation case. Because he based it on that. And so we said, then give us leave to file. And he said it's the same thing. Either way, so in the trial court's ruling, it didn't say that's a different case. It said that's a feudal amendment. The court, respectfully to the trial court, who I have a great admiration for, should have granted us leave if that is the direction the trial court believed the case should have gone. It would have changed the evidence a bit. And there was the contractual obligations there in the reinsurance policies. And that was a motion then that should have been granted. And the jury would have been told that. The leave to amend would have changed the evidence. Wouldn't developers have been in a better position then? Because you would have recovered the total amount, which is different than the calculations in the contracts that we're talking about. Ultimately, no, because … Now, your point is that it's a difficult calculation. But in fact, both policies make it clear, until the balance is restored in the Munich leave policy into the pool, and the other says until it's fully paid. Right. So there may be a calculation, but the wrongdoer shouldn't get the benefit either of a difficult calculation or a subrogation which would then purely be paid back because that was obligated to under the contract. No, sure, you benefit. I mean, you can't get a double recovery. Oh, we're not getting a double recovery. Well, maybe you are. We don't know because we don't know what that calculation is. I think that's part of what Justice Mason is saying. You know, there's this hidden thing. We don't know if the expert testimony and so forth, which wasn't part of this case. So the position would have been, because you've been fully compensated, and we're only talking about this contractual obligation, and the only thing you were going to present was the total amount that had been paid over to you, which is more possibly banned. Well, I would respectfully point out this. We either pay contractually because of the loss. The loss doesn't calculate in malpractice. It would be based on the repayment bond and the performance bond and the attorney's fees. That would get repaid. But in a situation where there is legal malpractice or another basis upon recovery against a third party, under the contract, we could go after and if we establish our malpractice, we get that recovery. That goes to the reinsurer under the obligation to repay. So it's certainly not a double recovery. In fact, the reinsurers may get anything back, and we still may get a higher premium. But certainly developers isn't benefiting from this. Mr. Lipinski and his law firms are benefiting from being wrongdoers and then trying to, number one, we can't bring necessarily a case, because of the legal malpractice rules. And then we have to have actual damages, and our actual damages either is the repayment obligation under the contract, subrogation, or you know we have to repay. The contractual obligation is there. We cannot walk away under traditional insurance that you had in USF or a voluntary payment as you had in Sterling Region. I understand your position. I think the trial court was entitled to say the case you want to present to the jury, that is developers is the victim of malpractice to the tune of $2.6 million, is not one you can present because developers has been paid. And that when developers on the eve of trial said, let's change this case from a malpractice case to a subrogation case, the court said, no, you're too late. No, the court didn't say that. Respectfully, the court said it's an amendment that's futile. It's the same case. We still would have to prove malpractice. The fact that we bring it as a subrogation is more in form, not substance. The substance of the case would still be expert testimony as to whether or not the lawyer committed malpractice. It still is a malpractice case in the nature where states allow equitable subrogation, for example, the case I mentioned where an excess carrier can, in essence, step into the shoes of someone who does pay because even though they don't have an attorney-client relationship, but this state hasn't gone there. So the court said this is for a higher court to decide. What the trial court was clear about was that this wasn't a Sterling Radio case. It wasn't a USF case. It was a case of contract obligation to repay directly or take it as a subrogation case, which is why the court said it's the same. Let's assume we take it as a subrogation case. Then you would have to abide by 2-403C and bring it in the main insurance, correct? It would probably be the style of the case would be developers' surety and identity as some agree of the two insurance companies. And obviously we're not allowed to do that because the judge denied your request. The judge denied our request and we would ask them to reverse the remand with instructions. But at the end of the day, the wrongdoer should not benefit from what is a case of first impression. And I would suggest that even as a subrogation case, you're changing the title, but the case itself is the same. The quantum of proof is the same. Counsel, I have but one question. Yes, sir. Isn't the whole purpose of this lawsuit to repay the reinsurance? Wasn't that the purpose of it? It was used when we paid. Let's answer that one question. To repay the reinsurance. It was to collect the monies that had been paid in advance to cover all the losses by the reinsurers under the contracts that required my client to repay those two carriers and or seek recovery. Is that a yes to Justice Neville's question? It's a yes plus. Well, what's the plus? It sounds like you're saying exactly yes. I mean, what else do you need to say? What's the plus? The plus was the repayment here. In a true equitable subrogation, it isn't an equitable subrogation case in the sense that in a pure equitable subrogation case, there is no obligation to repay. But you are standing in the shoes of a carrier trying to recover for that carrier that ultimately paid. So that's the yes plus because I've had the pure equitable subrogation case, which is exactly that. But this also, you have the contract to repay under the premium calculation, which may be difficult. But in fact, what we know from those contracts is that there's a legal obligation to repay it all. Now, let's calculate. To the mind of endurance and you agree. Until they think they're fully repaid, either into the pool or the balance under endurance. Now, wait a second. Wait a second. Let's say you styled your case as a subrogation case from the get-go. You said re-insurers have paid. And we're bringing this case against the wrongdoers who caused the loss in order to recoup the loss. Let's say a jury agrees with you that the defendants caused the loss. Judgment goes to the re-insurers in total or over time? I would assume it would go immediately and therefore the answer in that scenario is yes. So I don't understand then if the entirety of the judgment to the extent of the re-insurance payments would go to the re-insurers. Why we're talking about premium calculations? Because that would, you know, again, Harriet, but if it's pure contract, then if you have recovered on those, so if you've satisfied only your contract, the obligation to go after the wrongdoer and get repayment, then I, as a contract would function, you wouldn't have to make the increased calculations to restore the pool. You wouldn't have to pay those premiums whether there's a third-party wrongdoer or not, right? Because that's the way re-insurance operates. We have to replenish the pool. Yes, and that would be the way of doing it. So that premium calculation is not as a consequence of legal malpractice. That's just, that's how re-insurance operates. And I think what we're struggling with is developers brought the case in its own name as a victim of legal malpractice when, in fact, this is a subrogation case because it has contracts with its re-insurers and any recovery on the malpractice claim won't have to go to them. Well, and then I would say that then you're talking about, in essence, the form of the case, and therefore our motion respectfully should have been granted to allow us to restyle the case, which would be presented with the same quantum of proof. Well, why should we allow that considering it's trial? I mean, we're at trial. Right. Judge denied it. All right. Abusive discretion standard. It's not a de novo review. In this context, it ends up being a de novo review because the end result is that he's saying you don't have damages. He didn't say, the court did not say you're too late on this amendment. But if you had brought it as a subrogation, you would have had damages. Okay. What the court did here was say, no, it's the same. So it's a de novo standard here because the order that was entered and from which this appeal flows is a dismissal with prejudice for the inability to prove actual damages. If the court, or if this court, decides that the form of it should have been in subrogation and therefore the case should have been brought as a subrogation, then certainly the equity of this process in coming to an appellate court would allow you to remand with instructions to allow that motion to be granted. Because, again, it is the form of the case, the substance of the case would proceed, and the wrongdoer wouldn't benefit from improper form, if you will, if that's the wisdom of this court. And so the court would have to decide, well, if the court decides that this motion is not in subrogation,  If the court decides that this motion is not in subrogation, then you should get to the merits. You should get, as this court would always say, you should get to the merits. On the eve of trial, how did the court abuse its discretion by denying your motion to amend the complaint and make it a subrogation? The court denied it summarily without argument, saying it was, in essence, the same. It was futile and would have, I believe it said, I believe the court said it would be futile to do so. Couldn't the court decide, given the history of this case and the difficulty with which it, the discovery of the reinsurance payments was kind of trickled out and it was incomplete and it wasn't until the arguments on the motions in Lemonet that developers finally said, we've been paid 100 percent. Wouldn't the court exercise its discretion under those circumstances to say, I'm not going to allow you to amend now? Well, but it didn't. And the trickle down was that this was never a focus of the case. There was an early motion and two or so years prior to it. If it wasn't a focus of the case, then why did developers work so hard not to disclose it? That's, Your Honor, we did. We disclosed it. We made the, we were the ones that made the argument it's not, it's not germane to the case. They said it is. It's absolutely germane to the case. Now that you say this is really a subrogation case, which should have been granted leave to amend because it was so ministerial, I don't understand how you say it wasn't germane. We argued it wasn't germane. Certainly my side is 20-20. Okay? That's true. But neither side litigated this issue until we got up to the EVA trial, we were on trial, and it was brought even after dispositive motions. This is, in essence, a dispositive motion that the defendant didn't bring. But the court entertained it anyhow, which is the court's right. I'm not arguing with that. I'm just saying it wants the court to pass its own order as to dispositive motions, and this is a dispositive motion. This was brought in. You don't have damages. Okay? And part of my argument was if we weren't allowed to, in essence, stand in the shoes of the real jurors, obviously for the small amount of money that developers was, in fact, out-of-pocket, they wouldn't bring this case. It was for the totality of the injuries and the damages in the situation. If the case had settled for $1.1 million, developers still would have been out-of-pocket. It's $500,000 self-insurance pension, right? So no damages. No damages. And so we've – that's why we concede that 100% – But it wasn't a case of saying we're going to have a two-week trial for the sake of $500,000. The $500,000 is out the window. You would have paid that no matter what. Probably true. But the issue here is that if this is in the nature of subrogation, the court – the issue came up at the 11th hour. Well, the court should have let us amend because the substance of the case and getting to the merits of it is the same. The proof wouldn't have changed. The caption would have. I agree with you there. And the jury would have been told, would not have impacted the case, but we would have at least reached the merits of the case. And therefore, we ask you to reverse and remand with instructions to allow us to proceed. If the wisdom of this court is that the four of it should have been brought as a subrogation case. Let me ask a different question. In order for you to prevail, do we have to reverse or disagree with and not follow Sterling? Because there are pretty clear cases that have interpreted it as saying that the collateral source code doesn't apply to legal malpractice. Reinsurers are not parties to legal malpractice. The difference here is that you do have the contract. In Sterling, that was a voluntary payment that was made with no obligation to repay, no contract involved. Here you have a contract in which the court, Justice Mason, pointed out that you have the provisions of the premium issue and you have the provision of proceeding to the obligation. You're basically saying this doesn't apply because of the contract. For example, USF said there's no, we can't see a reason not to follow Sterling Radio. I am giving you the reason not to follow Sterling Radio. It does not apply because this is not collateral source in the sense there is a repayment obligation or a recruitment obligation that didn't exist in any of these other cases. And your argument is to take the next step is that the defendant would have a windfall. Yeah. They didn't benefit. They haven't accomplished anything. They're not having to pay. Reinsurance is the oil of that industry. Any time there's a malpractice case involving a surety or any insurer, the next step would be coming in and saying, well, this carrier now has reinsurance. So there's already an exception for lawyers that the average Joe in total fees doesn't have. To expand it here to reinsurance will give lawyers protection that maybe we shouldn't go that far. It's already a shield that lawyers get to use that no one else gets to use. And we should get to the merits. And if the wisdom of this court is that it should have been brought on a subrogation, then I respectfully ask you to reverse your demand and let's get to the merits and don't give the benefit to the wrongdoer. Unless there's any other questions. Thank you. Thank you. Thank you. Good morning again, Your Honors. Karen DeGran for the defendant's appellants with me today is John Duffy, who is trial counsel in this case. May it please the court, I'd like to try and address some of the questions that the court raised in questioning developers' counsel. It seems to me quite clear that it's an abuse of discretion standard that applies to the question of whether the motion for leave to amend to add a subrogation claim, not with the reinsurers as the named plaintiffs, but with developers as the named plaintiffs, clearly was a discretionary ruling. The motion was brought not even just on the eve of trial, but after the case had already been dismissed. So it's a situation that clearly called for Judge Mischel to exercise his discretion. And I think that the court should consider that it was not just futile, but also an untimely motion. So you would win on really a technical issue, that being that they should have brought the case originally and abided by 2-403C by naming the reinsurers in the caption? Well, no, Your Honor, that's not our position. Because let's take a step back here. It was developers' position from the outset of the case when we were conducting discovery that the collateral source rule barred discovery of this information. So talk about a moving target, talk about an evolution that is diametrically opposed to the position that developers is taking at this point on appeal. And when that changed was when we got to the motion to eliminate stage. So until that point, their position, they changed their position 180 degrees after the motion is eliminated, is what you're saying? That's correct, Your Honor. So they shouldn't benefit from that change in their charge? It goes to the substance as well, Your Honor. I would also point out to the court that if I understand counsel correctly, what he is speaking of today is a segregation action that developers would bring on behalf of the reinsurers. But time and time again, in opposing the production of this evidence, developers took the position, specifically said, the reinsurers cannot bring any action against the defendants because, and I'm quoting, there are no segregation rights on this legal malpractice case. And that appears at page 430 of the record and 547 of the record. What that would mean typically in your car accident case, all state who repaired my car then brings the action in its own name to subrogate against my rights against the at-fault driver. The reinsurers could not bring the action in their own name because you can't assign a legal malpractice. Right. But developers pursuant to its contract with the reinsurers could say, they've paid me, I'm obligated to pay them back, I'm suing the wrongdoer in my own name. What's wrong with that? Well, what's wrong with that is the, first of all, the nature of the case that they brought was a legal malpractice case, not a subrogation case. And that was true all the way through until we ran it on motions of limine. But what's also wrong with that analysis, respectfully, Your Honor, is the provisions of the reinsurance agreements, and they were identical in both the endurance re and the Munich re policy. The agreements don't invest in developers the right to bring a subrogation action on behalf of the reinsurers. What the provisions say is, and I'm quoting now, and this appears at 5224 of the record and 5243 of the record for the respective policies, that the company developers shall pay or credit to reinsurer with reinsurer's portion of any recovery obtained from salvage or subrogation. What they're talking, what this refers to is developers' right of salvage, developers' right of subrogation. And that would go back to the reinsurers. There's not any provision in here, so I have to disagree with counsel, saying that developers had an obligation or a right to pursue an action for legal malpractice for reinsurers. You would say that the reinsurers, if developers, let's say the attorney malpracticed, okay? Developers hired counsel, attorney didn't tell them about a settlement opportunity, which fell below the standard of care. Developer sues, and it's been paid by its reinsurers. Say it recovers. Are you saying that developers would have no obligation to pay back the reinsurance full? Not under these policies. That's not what these provisions say. There's nothing in here about paying back for legal malpractice claims. What is in here is you developers are obligated to pursue salvage claims. You, your salvage claims. You developers are obligated to pursue your subrogation claims, and we want that back. And it specifically says, shall pay or credit reinsurer with reinsurer's portion of any recovery obtained from salvage or subrogation. I mean, you know, these reinsurers know how to write these policies, and there's nothing in this policy that says, also, developers, you must pursue other kinds of claims. You must pursue legal malpractice claims. You must pursue whatever types of claims. Because developers wasn't suing my clients for subrogation. Developers was, even though developers is an insurer, this wasn't a subrogation claim. It wasn't stepping into the shoes of an entity to whom it paid a loss against a third party to recover. It was saying, you were my owners, and you malpracticed, and we want money back. That's what that claim was. So you're saying it was a double recovery for them? Well, it would have been if they, it would have been if they were able to recover. If they had exposed it at the end, they would have, they could have had a double recovery. I believe they could. Under this, under this, I'm looking at this specific contract. I'm not saying, you know, it's different language, and all these contracts, and there's various district court cases that have been cited, where it was either conceded or the language isn't there. There's nothing in this language that includes that obligation to pursue that kind of an action or repay. Can we decide this case without looking at that language? Are you saying we have to look at that language in order to decide the case? I think the language is germane to it. And this is, this is, this is all. So did the judge, trial judge consider that language? The judge did look at the language. And the judge, I'm sorry. What did he say? And the judge said, and it's in, it's in one of his orders, one of the written orders, that the trial court put his thoughts in writing on these issues and said, this is known to these, I've looked at these policies. This insurance doesn't operate any different than any other insurance. So developers' own subrogation claim would be if its subcontractor, 3D, had a claim against another subcontractor for delaying its work or preventing its work from being done. That's, that would be a subrogation claim. Because developers would be standing in, you know, would be stepping into those shoes. But that's not what happened here. So I think we have, you know, we're sort of mixing our concepts with subrogation. And to the extent that there would be any, I disagree. Well, I think counsel conceded that because of the lack of an attorney-client relationship, the reinsurers couldn't sue directly for legal malpractice. And any, I would submit that any action brought in the name of the reinsurers would be not only not viable, but also the statute of oppose had long expired. So I don't think there's any question. And the other part of this, and even though it wasn't part of the judge's specific ruling, the court can also look at this record and deduce this on its own. It seems to me that it's very clear that we would have a different case.  So, you know, at the point where not only were we at motions eliminate, but also the case had already been dismissed with prejudice, and now we have a motion for leave to file an amended complaint, clearly the court was acting, I think, wisely, but certainly within its discretion to say, no, we're not going to go there. But the public policy, looking back at that, your claim, are they benefiting from a windfall by not having to pay any damages? My position on that is no, Your Honor. And I'll explain why that's my position. I take the court to the Eastman case, which was the basis for the decision that this court issued in Sterling Radio. So when you look at Eastman, I think it really crystallizes that question about, you know, do we have a windfall concern. That was a case where the cop carrier wanted to assert a lien right in a legal malpractice case, and said, well, if this case had gone forward as it should have, we would have been able to recover the statutory portion of our lien in the underlying case. And the Supreme Court said, no, no, no, that's not how we calculate damages here. We look at the attorney-client relationship. That's how we calculate damages in a legal malpractice case. And we look at the net. We look at the net that the plaintiff, in this case it was a personal injury situation, or in our case we have a corporation, we look at the net. And so the fact, the court even went so far as to say this, if the cop carrier's position is that under the Workers' Comp Act it would potentially be able to go after the lawyer, no, we're not going to allow that. So I think my answer to your question about windfall, Your Honor, is no. Not under the way the Supreme Court has defined damages in legal malpractice cases. Would you agree that if there was an obligation to repay dollar for dollar that Sterling Radio would not apply? It would depend on the terms of the contract, I think, Your Honor. Obligation to repay. If you recover anything on account of the loss for which we pay attributable to the actions of a third party, you have to pay us back. Well, but there's another wrinkle on this. Because there was no obligation under these contracts to assume. Asking you to assume. If there is an obligation to repay, the injured party has been made whole but has an obligation to pay it back. Does Sterling Radio apply? Well, the other wrinkle that I would point to, Your Honor, is there was not even any obligation under this contract to pursue those kinds of claims. Only salvage or separation. So if they had an obligation to repay that amount. Could the reinsurers come in as equitable sub-regards? I don't believe they could. Why not? Because there's no attorney-client relationship. They're strangers to the relationship, Your Honor. In this case of the lawyers? They couldn't sue developers and say we paid you on account of this loss. You've now been reimbursed twice for the loss. Give us what we paid you. Depending on the terms of the contract, they may have a right against developers. They don't have a right against developers' lawyers in my view. And so I do think to answer one of the questions that Justice Hyman raised when talking with developers' counsel is I think on these facts, on this record, Sterling Radio would have to be reversed. Eastman, I think, would be called into question. If counsel's view of how damages are calculated in legal malpractice cases were accepted by this court. And I also would remind the court that in Sterling that there was some question about a diminution in value of the plaintiff shareholders' shares in the corporation. And they said, well, that's too attenuated. That is not an actual loss. That is not an actual damage. And that's what we're talking about here. With this premium calculation, it's part of the mix, and you look at all of the performance of the company over time and so on and so forth. It's not an obligation. So you're saying that in Illinois, the law would be, under these circumstances, where the malpractice, legal malpractice was by an attorney for an insurance company. The insurance company went out and protected itself by contract. The lawyers who committed the malpractice once have no obligation whatsoever once the corporation has been paid by the reinsurance. To the extent that it's been paid by the reinsurance. Yeah. That's correct. I don't think that insurers are entitled to any greater damage award than other legal malpractice plaintiffs, which seems to be the suggestion here. Why should we allow your client to get out? I mean, I just, I mean, and Sterling said that wrongdoers should not benefit from a contract which is fixed between the injured party and third persons. This is a contract between an injured party and third persons. Why should you benefit? Because of the way that Eastman has defined damages in legal malpractice cases, it's not a benefit. It's not a windfall. It's a calculation of the damages as between the attorney and the client. And that's what the, that's how the Supreme Court has defined it. It's drawn a distinction between personal injury recovery and recovery in legal malpractice cases, which is, as the court knows. So your position is because of Eastman, we must defer. That's correct, Your Honor. Eastman, and I believe Sterling was faithful to Eastman. Whether he was or wasn't doesn't really matter. No, I would say so. Just, I mean, the Supreme Court, they have to follow the Supreme Court. Correct, correct. Eastman is more important. Yes, of course. Of course, stare decisis, even horizontal, has some bearing. Yeah. But there was a dissent in Sterling's case. There was a dissent. That's correct. That's correct. But I think Eastman really compels this result. And I know, I think I've probably gone past my time. They went past their time. But I also would draw the court's attention to the alternate basis that we raised in our briefs to affirm the judgment. And that was based on the speculative nature of the plaintiff's contention. The motion for summary judgment was denied. The motion for summary judgment was denied. And the question that we sort of hung our head on, the issue, even though there was, you know, obviously this is not necessarily a simple case, but this was a somewhat simple concept, was we're talking about would Moran have settled? Would they have settled in this window of time? And when Brian Moran gave his deposition testimony, he couldn't say what the amount of the settlement was, but he would have accepted as far as another contractor to come in and complete the work and so on and so forth. The plaintiff primarily raised a procedural objection to my raising that argument, which I don't think is well-founded. We're certainly not required to file a notice of cross-appeal when we like the judgment just as it is and we're simply asking the court to affirm it and just pointing to another part of the record that provides that basis. And this was something that was — Usually, though, the alternative basis for affirming are issues which were presented to the trial court, but the trial court didn't get to it. I mean, here we have an issue that was resolved against your client, and they may be able to argue it on appeal, but it certainly makes it more difficult to prevail when the trial court did consider the issue and rejected it. It was — I agree, Your Honor, in that it wasn't what was before the court at the end of the day, but it was certainly something that was raised as part of our motions eliminating. The court denied those motions, but we — I think it's a very valid issue. I think it's a very important question, the question of — and because it does arise with some frequency in legal malpractice cases, and that is, what is the level of reasonable certainty in a situation where somebody is being accused of not facilitating a settlement? So I think the record's quite clear on it. And if the court has nothing further for me, thank you for your time. And, again, on behalf of the defendants' appellees, we request that the judgment of the circuit court be affirmed. Thank you very much. Mr. Dixon. Counsel's position is that the lawyers now are completely insulated. No matter which way we turn on this and however we had proceeded, they benefit. They carry easement to Sterling and say actual damages. The difference here, as the court pointed out, first of all, this is a case of first impression. This issue hasn't been addressed. But the obligation to repay, while maybe convoluted and difficult to determine, is still a contract that didn't exist in Sterling, doesn't exist in U.S.S. But your proposed amended complaint does not name the reinsurers. It does not set out the basis on which developers saying we have to turn over any judgment we recover in this case. You're not naming them. It's not a segregation complaint. I'm not sure what it is. Well, it was a request for segregation. Again, it may not have been in proper form. It may have been subjected again to a 615. But, again, we get to the merits, Your Honor. This is a difficult issue. It hasn't been in front of this court or any other court in this state yet. And so when you drill down as to where the equity is, what counsel's position is that no matter how we turn, the lawyer gets out of this, no matter what the lawyer does. But if it should have been a segregation case, you look at the contract. There is a salvage and segregation obligation. And certainly within the terms of that contract, which haven't been interpreted, where there was no hearing conducted by the trial court, but in the terms of that contract, obviously if they go and get segregation, but if they had paid out more, they would have been obligated to repay. If we agree with Ms. DeGran's interpretation of the subrogation and salvage provision, that it refers to developers' right of subrogation and salvage, then what we have is, if I understand the situation, no contractual obligation to remit the judgment to the reinsurers. The reinsurers would in fact have to come in in their own name and file an equitable subrogation case, right? Developers would say, nothing in the contract requires us to pay you. Well, I don't know if that is, again, this contract was not construed in the trial court. There may be ambiguity for which evidence should have been presented and the court could have made a determination. But to take two examples of your, obviously the salvage and subrogation rights are there. As you pointed out, there is a minimum amount that developers had in terms of its direct exposure. There would be interpreted in this contract, and if you got anything above that, then you would have to pay it back. Or it's an equitable subrogation claim, which would be a case of first impression at this level, because there hasn't been a filing of equitable subrogation. But at the end of the day, it is about equity and what is the right thing to do. You start with the Clyro source rule that only applies to lawyers. And now you want to apply it in a situation where there is a contract and an obligation to repay, and then they apply a learning curve and the others and say, ha-ha, we didn't have a direct attorney-client relationship with you, so no matter when you turn, we're not responsible for our wrongs. And that is fundamentally against the law and the Constitution in this state. What we have given here in this argument, and for the first time I believe in front of a court, is the opportunity to say, no, Clyro source doesn't go this far. There is an obligation to repay. You can reverse the demand and either interpret this contract and see where the salvage and subrogation applies or give them leave to file as an equitable subrogation or a subrogation within the contract. But further proceedings in the trial court should be determined in order to see where you can proceed in this case, because there is damage. Payments were made. There is an obligation to repay, no matter how difficult it might be to determine, or as an equitable subrogation if they got a lump sum under the salvage or subrogation and paid it back. There is the obligation to repay. I understand what you're saying. Go back one second. Just tell me why Eastman does not cause us to not follow what you just said. Because there are actual damages here. There are actual damages in the obligation to repay or it's an equitable subrogation. So we have to find it to be an equitable subrogation or find that there are actual damages. There are equitable damages under the obligation to repay. This is different. There is no, you've not had a case, again, not to have actual damages. And then you jump over to Sterling Radio and it says, well, there are actual damages because that was a voluntary payment. USF is not there because there was no obligation to repay. And even there, they said, even in USF, they said, you know, we're not even reaching the parent versus subsidiary because there are other reasons to affirm this case. But there would have to be determination if there were some actual damages there. Here you have the obligation to repay in the contract. That's the distinction. That is the reason to depart from Sterling Radio. And the argument here, in fact, I would argue the other way. The fact that there is an actual damage case out there and the attorney-client duty, you shouldn't allow those two to be used in a situation here where you have a contract of an obligation to repay to raise the bar and put a bigger shield for lawyers so that they can never be sued now. You mean that in a couple of ways. Yeah. So I mean that in a few different ways. So this is an interesting – you've given us more than enough time today. But equity demands that we have a remedy. And this Court has the power to write that remedy, structure it, and send it back to the trial court and respectfully ask you to do so. Thank you very much, Mr. Chairman. Thank you very much. We've been troubled by this case, which is why you both are here. And we very much appreciate the light you both have spread on your briefs. And we'll take the case under advisement. And both did an excellent job. Appreciate it very much. Thank you.